Commonwealth of Pennsylvania, Appellant, *v.* Lehigh Valley Railroad Company.

*Taxation—Tax on corporation bonds—Nonresidents—Presumption—Acts of June 30, 1885, and June 8, 1891.*

Under sec. 4 of the Act of June 30, 1885, P. L. 193, amended by the Act of June 8, 1891, P. L. 229, providing that it shall be the duty of the treasurer of each private corporation upon the payment of any interest on any script, bond or certificate of indebtedness issued by said corporation to residents of this commonwealth, and held by them, to assess the tax imposed and provided for state purposes upon the nominal value of each and every of said evidences of debt owned by residents of this commonwealth as nearly as the same can be ascertained, and to deduct four mills on the dollar and pay the same into the state treasury, there is no presumption that the bonds of domestic or Pennsylvania corporations are held by residents of the state.

The tax on the bonds of corporations is not in any sense or in any degree a tax on the corporation or its property, but on the individual citizen of the state who holds the bonds. The corporation is chargeable with it only as a collector, and by reason of default in the duty to collect. The duty of the corporation is to use diligence to ascertain the residence of its bondholders, and whether it has or has not done so is a question of fact in each case to be determined by the circumstances and the evidence.

Argued May 31, 1897. Reargued Feb. 23, 1898. Appeal, No. 15, May T., 1897, by plaintiff, from judgment of C. P. Dauphin Co., commonwealth docket, 1896, No. 881, on case tried without a jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from tax settlement.

The facts appear by the opinion of McPherson, J., which was as follows:

This case was tried without a jury under the provisions of the act of 1874. From the evidence offered at the trial and an agreement of the parties, we find the facts to be as follows:

1. The defendant is a corporation of the state of Pennsylvania. During the year 1895 its indebtedness was $33,609,000, consisting of several series of bonds issued at different times between May, 1868, and November, 1873, each series being secured by a separate mortgage.

2. Of this total, (*a*) $3,938,000 was held by corporations of Pennsylvania, not including state banks and savings institutions, (*b*) $1,236,000 was held by state banks or savings institutions, (*c*) $19,869,000 was held by individual residents, or by domestic corporations as trustees, (*d*) $3,452,000 was held by nonresidents, (*e*) $5,114,000 was held by persons, concerning whom the defendant's treasurer reported that they could not be ascertained to be residents of Pennsylvania. He declared also under oath that " the amounts owned by residents and nonresidents of Pennsylvania respectively " were correct and true " as nearly as the same can be ascertained after diligent inquiry."

3. Of the total amount above stated, it is agreed that $21,502,000 is taxable, and $6,993,000 is not taxable; leaving in dispute the question of the defendant's liability in respect of the tax upon the item marked (*e*). Of this item $327,700 was held in 1895 by domestic corporations as trustees, or by domestic corporations having no capital stock and paying no tax upon capital stock, or by state banks or savings institutions. But it is also agreed, that the ownership of these bonds came first to light from the reports of certain corporations to the auditor general; that these reports were not made until after the interest upon the bonds had been fully paid, not until after the end of the tax year; and further, that these reports were not at the defendant's command or open to its inspection.

4. As a part of the defendant's report to the auditor general for the year in question, several schedules appear setting out with elaboration how much of the loans and indebtedness of the defendant was held, owned or possessed by corporations of

Pennsylvania; how much, by domestic corporations as trustees, agents or attorneys in fact, or by individual residents of the state, whether as agents or trustees or in their own right; how much was held by state banks or savings institutions; how much, by nonresidents; how much, by persons whose residence could not be ascertained after diligent and careful inquiry—with other details concerning each of the six series of bonds. This report was the result of careful, painstaking and diligent inquiry made by the defendant's officers in order to ascertain the facts contained therein; and these officers discharged their full duty to the commonwealth, and ascertained as nearly as lay in their power the relevant facts concerning the owners of the company's bonds, and particularly the facts concerning the residence of such owners. There is no evidence to show that the officers could have ascertained by proper diligence the residence of any other holder of the defendant's bonds; and no presumption of fact arises from the evidence before us, that the residence of any bondholder, which was returned as unknown, was actually within the state of Pennsylvania in the year 1895.

5. Of the bonds held by persons whose residence is unknown, $1,319,000 were originally sold in London, and are not known to have returned to this country. It is well known that the bonds of solvent and prosperous railroad companies, such as the defendant, are much desired by investors in different states and countries, and are constantly changing hands. Interest coupons are usually payable to the bearer, and ordinarily are presented for payment, not by the owner of the bonds in person, but by messengers of banks and other collecting agencies who rarely know the name and address of the owner of the bonds from which the coupons have been detached.

6. The defendant has paid $80,000 on account of this settlement.

### DISCUSSION.

This case presents for the first time the question: Is a domestic corporation bound to discover the residence of every person that holds its bonds, under penalty of being charged with the tax upon every bond of which it fails to find the owner? The residence of the owner is always important, sometimes is decisive, in determining whether a bond is taxable. Residence, however, does not often appear on the face of the obligation or the coupon;

and owing largely to this fact, a great deal of such property escapes taxation. In the effort to impose the tax, not upon the owner of the bonds but upon the collecting agent of the state, the commonwealth now contends that when bonds are issued by domestic corporations a presumption arises that they are issued to residents and continue to be held by residents; and further, that if the corporation does not prove that the bonds are now held by nonresidents, the court is bound, not only to presume that they are held within the state, but also—for this too is necessary—to draw the inference that, because the holders have not been found, the officers of the corporation have failed in diligence. In effect, this contention requires the court to presume a fact contrary to experience and testimony, and from the mere presumption to draw an inference of wrongdoing.

In considering the commonwealth's position it is desirable to bear in mind the nature of the tax in question, and the relation of the corporation thereto. Upon this subject there is no room to doubt. In Com. v. Lehigh Valley R. R. Co., 104 Pa. 99, the first of the recent series of decisions concerning this species of taxation, Mr. Justice CLARK said: "It certainly must be conceded that the tax in question can in no sense be considered as a tax upon the corporation, its property, or its franchises; it is upon the corporation's indebtedness in the hands of its creditors; a tax upon the property of individual citizens of the state. . . . . The tax is imposed indiscriminately, upon all mortgages, etc., in the hands of the owner or possessor, but the corporation is made the collector of the tax upon the corporate loan." This statement has never been questioned; its accuracy is beyond dispute. The same thought is found in the following extract from Com. v. R. R. Co., 145 Pa. 62: "The duty and the right to retain the amount of the tax, on payment of the interest, is a duty and a right which attaches to each individual bond and its coupons, and not to the bonds and coupons in the mass. That is to say, it is not the duty of the treasurer, and he has not the right, to deduct the tax from any given coupon, unless the bond with the corresponding number to which the coupon belonged is held in Pennsylvania. Hence, even if he knew that say $100,000 in amount of the bonds were held within the state, he could not legally deduct the tax from any of the coupons presented for payment, unless they belonged to the particular

bonds so held. Therefore, if we were to hold the defendant liable to any part of the tax claimed in this settlement, on the inference or presumption that some of the bonds are held in Pennsylvania, without proof which particular bonds are so held, we should require it to pay to the state a tax which it could not possibly retain or collect from the bondholders, upon whom, and not upon the defendant, the tax is imposed. This would be such a monstrous injustice, and so entirely unwarranted by any fair construction of the act, that we cannot possibly so hold."

The commonwealth does not directly attack these decisions, but seeks to limit their scope greatly by advancing the argument that the corporation as collector is bound to find every holder of its bonds, the penalty of failure being the imposition of the tax upon itself. As already stated, this argument rests upon the presumption that, unless the corporation proves the contrary, every holder is a resident and can be found; and the argument must fail if the presumption does not exist. So far as we know, the courts have never recognized such a presumption; and we think that none such exists in fact. The liability of a corporation to pay this tax does not rest upon presumption, but upon proof that its officer has failed to perform the duty imposed upon him by law. The fourth section of the revenue act of 1885, P. L. 193, requires the company's treasurer to assess the tax upon the nominal value of any script, bond or certificate of indebtedness, " issued by said corporation to residents of this commonwealth and held by them ; " to report on oath annually the amount of indebtedness " owned by residents of this commonwealth, as nearly as the same can be ascertained ; " and to collect the tax when the interest is paid to the holder, and make return thereof to the state treasury. The contingent liability of the company is not found in the words of the statute, but is deduced from the principle that the corporation is bound by the conduct of its officer. If he fails in duty, the company must answer for his default. This appears plainly in several cases. In Com. v. Canal Co., 123 Pa. 618, the court say: " The act constitutes the company, or its treasurer as such, the collector of the tax ; and upon failure to discharge the duty imposed by law, the settlement is properly made against the company whose servant he is, as in the case of the default of any other officer of the government upon whom a like duty is imposed. The obligation rests upon

the company, but as the company can only act through its officers, the default of the officer is esteemed the default of the company, and the penalty is visited upon it.   The treasurer is designated, in order that there may be no evasion, he has exceptional opportunities to know, and has the power in his own hands to perform the several matters required." So also, in Com. v. Railroad Co., 129 Pa. 449, it is said: " The company was bound to see to it that the treasurer performed his duty in assessing the tax and retaining the amount out of the interest; if he made default in this, his default must be visited upon the company which he represents and for which he acts.   The settlement is made against the company, not for taxes of the company, but for taxes which the company through its treasurer ought to have collected. If the treasurer has failed or refused to perform what the law plainly required him to do, and has thereby relinquished his right to charge the creditors upon whom the primary obligation would otherwise have rested, the company whose interests he represented and whose instructions he is presumed to have pursued, is rightly held for the consequences of such wilful default."   In Com. v. Coal & Iron Co., 137 Pa. 491, the liability of the corporation is put upon the same ground: " The receivers' treasurer was also the treasurer of the company.   Upon payment of the interest, it was his duty as treasurer of the company to assess the tax, and the like duty of the receivers to pay it. . . . Acting in the dual capacity of treasurer for both the company and its receivers, his duty was plain and clear, and failing in the discharge of that duty, the company is liable for his default." And on page 493: " If the coal and iron company, by its mode of dealing with the railroad company, put it out of the power of the treasurer to deduct the tax from the interest, it was nevertheless his duty to make the assessment, and thus to fix the responsibility of the company for payment thereof. This, however, he failed to do, and for this failure the company is responsible." Finally, in Com. v. Canal Co., 150 Pa. 248, the court recognize again the obligation resting upon the company or its treasurer to act as collector—defined by Justice CLARK in 123 Pa. 618—and recognize also the rule of law, that the default of the officer may be properly imputed to the company, and may justify the penalty imposed upon his principal.

In the light of these decisions, it can hardly be successfully

contended that the presumption now in question has any place under this statute. If the presumption exists, every bondholder is prima facie taxable because he is presumed to be a resident. Why, then, direct that only bonds in the hands of residents are to be taxed, and require the company's treasurer to report the amount " owned by residents as nearly as the same can be ascertained?" Moreover, if the presumption exists, it is an incorrect use of words to speak of the treasurer's "default" or "failure to discharge the duty imposed by law," as a harm done to the commonwealth. His activity would more likely be a benefit to the company than to the commonwealth, for the discovery of each nontaxable bondholder would relieve the corporation to some extent; but if he should be in "default," if he should do nothing to discover the residence of the owners, he would be serving the commonwealth best.

Manifestly, however, this view of his duty is not the view taken by the courts. For example: In Com. v. Chester, 123 Pa. 626, a treasurer refused to assess certain municipal bonds, failed to deduct the tax, and made no return as to the residence of the holders. What he might have discovered if he had made an effort, it was impossible to say; accordingly, his conduct was regarded as a wilful default in his duty to the state, and the inference was naturally and properly drawn that the bonds were all in the hands of resident owners. This was not a presumption of fact arising out of the circumstances attending the original issue, or out of any other circumstances; upon these matters there was no evidence; it was an inference drawn from the treasurer's conduct, intended to be followed by punishing the corporation for his default. So also, in Com. v. Salt Co., 145 Pa. 53, the treasurer of the company having refused or neglected to perform his duty, the court drew a similar inference from his conduct, and in order to punish the corporation for his default assumed that all the bonds were held by residents. But in a case decided at the same term—Com. v. Railroad Co., 145 Pa. 57—a different conclusion was reached, because the conduct of the treasurer had been different. He had made a proper effort to ascertain the ownership of the bonds, and had reported the result of his inquiry. Accordingly, the court refused to draw the inference that the bonds whose ownership remained unknown were held by residents, saying : " If the legislature

choose to say that the corporation shall be liable for the tax on all bonds which it cannot prove to be held outside of the state, if it does not deduct the tax therefrom on payment of the interest, it can do so; until it does, we do not think it is the duty or even the right of the courts to read such a provision into the act as it now stands."

A recent decision of this court on the subject, Com. v. People's Pass. R. R., No. 386, September term, 1891, has not been reported, but will be found to follow the authorities cited above. In that case it was found as a fact that " defendant's officers have made every reasonable effort to ascertain the ownership of the bonds, and have reported their ownership as nearly as could be ascertained;" and this was held to relieve the company from liability for the tax.   Judge SIMONTON said : " The duty imposed upon corporations having bonded indebtedness by section 4, act of 1885, through their treasurer, is to report on oath the amount of indebtedness of the corporation owned by residents of Pennsylvania as nearly as the same can be ascertained, and to assess the tax on the nominal value of each and every evidence of indebtedness so owned.   We have found as a fact that defendant's treasurer has done this, and as there is nothing to contradict this finding, and as no evidence has been given on behalf of the commonwealth to show that the defendant has failed to discharge its duty in the premises, we cannot visit upon it the penalty that can legally follow only as a consequence of such failure.   As we have elsewhere said, the injustice of holding the defendant liable for the tax without proof that the bonds are held in the state, as well as the difficulty of ascertaining the residence of the holders of the bonds, is illustrated by the case of Hinchman v. Philadelphia and Reading R. R. Co., 5 Pa. C. C. Rep. 632, where it was held by Mr. Justice MITCHELL, then in the common pleas, in an action for interest on certificates of loan against the corporation whose duty it is to retain the tax from the interest, that the plaintiffs were not bound to aver in their statement of claim, nor to prove on the trial, that they were nonresidents of the state, in order to recover the whole amount of interest due without the deduction of the three mills tax imposed by the act of June 30, 1885 ; and that the company must aver in its affidavit of defense, and prove on the trial that the holder of the bonds upon which the

interest was claimed was a resident of Pennsylvania in order to recoup the amount of the tax.

"We cannot therefore hold that the defendant is bound absolutely and at its peril to ascertain the residence of the holders and owners of its bonds. Its treasurer has no right to assess and retain the tax unless the bonds are actually held and owned by residents of the state, and according to Justice MITCHELL'S ruling—which merely applies the general principle that a party setting up an affirmative defense must prove it—he cannot justify the deduction of the tax from any given coupon unless he can prove to the satisfaction of a jury that the bond from which it was taken actually belonged to a resident; and that, even as against a party who of course knows and could readily prove the fact of his residence."

It is not necessary to prolong the discussion. As we understand the cases, the sum of the matter is this: The statutes concerning this tax do not require impossibilities; they only impose upon the treasurer of the corporation the duty of assessing and collecting, so far as the holders of the bonds can be ascertained; and this language means that he must exercise reasonable diligence in ascertaining who the holders are and where they reside. There is no rigid standard of diligence. In every case the question, whether or not the officer's duty has been discharged, must of necessity be answered according to the evidence. In the case now before us we have found as a fact that his duty has been done with care and diligence; and in this finding we include his duty in respect of the bonds, amounting to $327,000, which are now known to have been held by domestic corporations during the tax year 1895, and probably would have been taxed if the defendant had then known of their existence. No tax is to be imposed upon the company in respect of these bonds; for the failure to find them was not the fault of the treasurer, and the company cannot be held liable unless its officer has failed in duty.

We find as a conclusion of law, that for the year 1895 the defendant is liable for tax upon only $21,502,000 of its bonded indebtedness. Upon this sum the four mills tax is $86,008, of which the defendant has paid $80,000. The commonwealth is entitled to recover as follows:

| | | |
|---|---:|---:|
| Principal, . . . . . . . | $6,008 | 00 |
| Less treasurer's commission on $86,008, . | 480 | 04 |
| Balance, . . . . . . . | 5,527 | 96 |
| Interest at 12 per cent from August 28, 1896, to March 18, 1897, . . . . . | 386 | 96 |
| Attorney general's commission, . . . | 276 | 40 |
| Total, . . . . . . . . | $6,191 | 32 |

For which amount we direct the prothonotary to enter judgment if exceptions be not filed according to law.

*Error assigned* was not entering judgment for the full amount of the commonwealth's claim.

*John P. Elkin*, deputy attorney general, and *Henry C. McCormick*, attorney general, for appellant.—It is the duty of the officers of the defendant corporation to deduct the tax and pay the same into the state treasury. When an exemption is claimed by reason of the fact that certain bonds are held by nonresidents, the burden of proof is upon the company to show that fact. The commonwealth invokes the presumption that all bonds issued by a Pennsylvania corporation are held by residents of Pennsylvania, and that the burden is upon the person claiming that they are held by nonresidents to establish that fact: Com. v. Lehigh Valley R. R., 129 Pa. 449; Com. v. Salt Mfg. Co., 145 Pa. 55; In re State Tax on Foreign Held Bonds, 15 Wallace, 300; Com. v. New York, Lake Erie & Western R. R., 150 Pa. 234; Com. v. City of Chester, 123 Pa. 626.

The officers of the defendant corporation did not make such an effort to ascertain the residence of the bondholders as would exempt the corporation from the payment of the tax sought to be recovered by the commonwealth in the proceeding now pending before the court.

*M. E. Olmsted*, for appellee.—The facts found, being ample and clearly supported by the evidence, are not subject to review here: Jamison v. Collins, 83 Pa. 359; Lee v. Keys, 88 Pa. 175; Brown v. Dempsey, 95 Pa. 243; Bradlee v. Whitney, 108 Pa. 362; Com. v. Hulings, 129 Pa. 317; Com. v. Westinghouse El. & Mfg. Co., 151 Pa. 265.

This is not a case in which defendant seeks exemption from a

tax imposed by law upon it, but is one in which the common-
wealth seeks to impose a penalty upon defendant for the alleged
default of its treasurer in assessing and collecting a tax upon
its creditors whose liability for the tax has not been shown:
Com. v. Lehigh Valley R. R., 104 Pa. 89; Com. v. Canal Co.,
123 Pa. 594; Com. v. Lehigh Valley R. R., 129 Pa. 429; Com.
v. Erie, etc., R. R., 74 Pa. 94; Com. v. Pittsburg, etc., Ry., 74
Pa. 83.

The plan suggested by the commonwealth for ascertaining
the residence of bondholders would violate the statute and the
federal constitution, and involve the company in vast difficulty
and expense and possible bankruptcy: State Tax on Foreign
Held Bonds, 15 Wall. 300; Fox's App., 112 Pa. 337; Hinch-
man v. Phila. & Reading R. R., 5 Pa. 632.

OPINION BY MR. JUSTICE MITCHELL, May 23, 1898:

The court below sitting without a jury under the act of 1874,
found that the report of the defendant company to the auditor
general " was the result of careful, painstaking and diligent
inquiry made by the defendant's officers in order to ascertain
the facts contained therein; and these officers discharged their
full duty to the commonwealth, and ascertained as nearly as lay
in their power the relevant facts concerning the owners of the
company's bonds, and particularly the facts concerning the
residence of such owners. There is no evidence to show that
the officers could have ascertained by proper diligence the resi-
dence of any other holder of the defendant's bonds; and no pre-
sumption of fact arises from the evidence before us that the
residence of any bondholder, which was returned as unknown,
was actually within the state of Pennsylvania in the year 1895."

This finding, in the absence of convincing demonstration of
error, is conclusive of the case, unless the court was wrong in
refusing to recognize a presumption that the bonds of domestic
or Pennsylvania corporations are held by resident owners. The
commonwealth contends that this is a proper and necessary pre-
sumption, and that it throws on the corporation the burden of
proving what bonds are exempt from tax by reason of the non-
residence of their owners. The existence of such a presump-
tion is the vital question in the case.

To ascertain if the corporation is claiming an exemption from

a general tax we must look at the statute. The Act of June 30, 1885, P. L. 193, provides: " Sec. 4. That hereafter it shall be the duty of the treasurer of each private corporation . . . . upon the payment of any interest on any script, bond or certificate of indebtedness issued by said corporation to residents of this commonwealth, and held by them, to assess the tax imposed and provided for state purposes upon the nominal value of each and every said evidence of debt, and to report . ,. . . to the auditor general the amount of indebtedness of the corporation owned by residents of this commonwealth, as nearly as the same can be ascertained; " and to deduct three mills on the dollar, etc., and pay into the state treasury. The Act of June 8, 1891, P. L. 229, increased the tax to four mills, but made no other change which affects the present question.

The tax is not in any sense or in any degree a tax on the corporation or its property, but on the individual citizen of the state who holds the bonds. The corporation is chargeable with it only as a collector, and by reason of default in the duty to collect: Com. v. Lehigh Val. R. R. Co., 104 Pa. 89; Com. v. Del. Div. Canal Co., 123 Pa. 594; Com. v. Lehigh Val. R. R., 129 Pa. 429.

The tax, moreover, is not only not on the corporation but it is not on the bondholders generally, but only on such as are within the taxing power of the state. This limitation is the result of the language and intent of the act, and also of the lack of jurisdiction of the state itself to tax property of non-residents which has no actual situs within the state. The tax, therefore, is not a general tax on all bonds, but only on such as are "issued to residents of this commonwealth and held by them," and the duty of the corporation is to assess it and " to report to the auditor general the amount of indebtedness of the corporation owned by residents of this commonwealth, as nearly as the same can be ascertained." The ascertainment of this amount is a matter of fact depending in each case on the circumstances and the evidence. There is no presumption in regard to it. Presumptions are founded on the ordinary and usual course of events, as shown by common experience. The testimony in the present case of experts, bankers, brokers and dealers in such securities is uniform that, though in the case of a small corporation whose affairs were not well known away

from home, the bonds would be likely to be held locally, yet in the case of large corporations, the bonds are dealt in and held in many different states and in foreign countries, and are constantly changing ownership between residents and nonresidents of the various states and of foreign countries. A very pertinent illustration is to be found in the present case where it is shown that of the bonds returned by the company as held by persons whose residence is unknown, one million three hundred and nineteen thousand dollars were originally sold in London, and are not known to have been returned to this country. In the face of such testimony and such facts, it would be contrary to reason and justice, as well as to experience, to hold that there is any presumption on the subject which the corporation is required to overcome. The duty of the corporation is to use diligence to ascertain the residence of its bondholders, and whether it has done so is a question of fact in each case to be determined by the circumstances and the evidence.

Judgment affirmed.

