## Commonwealth v. National Steel Corporation

*T. McKeen Chidsey*, Attorney General, and *Carl F. Chronister*, Deputy Attorney General, for Commonwealth.

*M. Clyde Sheaffer* and *B. B. Bastian*, for defendant.

BRAHAM, P. J., February 28, 1949.—This case is before the court en banc upon the appeal of National Steel Corporation, defendant, pursuant to section 1104 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1104, from resettlement by the Board of Finance and Revenue of defendant's corporate loans tax for the year 1935. The facts have been stipulated but it is unnecessary to recount them except briefly at the outset and as may be required in our discussion.

The tax in dispute is on a corporate bond issue known as first (collateral) mortgage sinking fund gold bonds, five percent series, due 1956, in the amount of $4,354,000 for the period from June 14, 1935, to July 29, 1935. Defendant admits that tax at four mills is due up to June 14, 1935, but denies any tax thereafter; the Commonwealth claims tax up to and including July 29, 1935. The problem arises because defendant undertook to refinance all the outstanding bonds of the five percent series due in 1956 with new bonds at four

percent. The purchaser of the new issue required that money for the retirement of all the old bonds be paid to the trustee under the mortgage trust agreement simultaneously with the purchase of the new issue.

Accordingly on May 28, 1935, defendant gave notice satisfactory to the trustee, as required by the mortgage trust indenture, of its intention to redeem on July 29, 1935, as a whole its bonds of the five percent series due in 1956. The precise form of corporate action employed by the National Steel Company to achieve the retirement of the old issue is not in evidence before us but the material portion of the notice to bondholders is as follows:

"National Steel Corporation, a Delaware Corporation, pursuant to the provisions of said Mortgage Trust Indenture, has elected to and will redeem and pay off on July 29, 1935, all of the above described Bonds issued under said Mortgage Trust Indenture then outstanding at the redemption price thereof set forth in said Mortgage Trust Indenture, to wit: One hundred and five per cent (105%) of the principal amount thereof plus interest accrued and unpaid on said Bonds to July 29, 1935; and all holders of said Bonds are hereby required to present and surrender said Bonds, having attached thereto all interest coupons maturing after said redemption date . . . on or after said redemption date, for redemption at the redemption price thereof then payable as aforesaid. On July 29, 1935, interest on all said Bonds will cease to accrue and all coupons appurtenant thereto maturing after said date will become and be null and void."

The tax in question is a corporate loans tax levied under the provisions of section 17 of the Act of June 17, 1913, P. L. 507, as amended by the Act of July 15, 1919, P. L. 955, 72 PS §2121, legislation which has been repealed and reënacted but the operation of which to pending cases has been saved by the Act of June 22,

1935, P. L. 414, as amended, 72 PS §3250-14. The tax is on "all scrip, bonds, certificates and evidences of indebtedness issued, and all scrip, bonds, certificates and evidences of indebtedness assumed, or on which interest shall be paid, by any and every private corporation", etc. The vital principle in this case is the nature of the tax. It is not a tax on the National Steel Corporation or its assets but on the individual citizen who holds the bonds: Commonwealth v. Lehigh Valley Railroad Co., 186 Pa. 235, 246. The corporation is but the collector of the taxes and is liable only for failure to collect: Com. v. Delaware Div. Canal Co., 123 Pa. 594, 618; Com. v. Wilkes-Barre & Scranton Ry. 162 Pa. 614.

The corporate loans tax is but part of a scheme of taxation. The Personal Property Tax Act of June 17, 1913, P. L. 507, established a difference between the personal property tax and the corporate loans tax. The former is paid by the holder of the bond on the true value, the latter is paid by the corporation on the par value. The two taxes are mutually exclusive. If the corporation pays the corporate loans tax the holder need not pay the personal property tax: Fidelity-Philadelphia Trust Company Tax Case, 354 Pa. 355, 360.

With these principles in mind the case at bar must be examined. In the brief for the Commonwealth it is stated that: "both the defendant and the Commonwealth agree that the obligations may be taxed only for the period of time that they were outstanding: Com. v. Public Ledger Co., 22 Dauphin 5".

Here the views of the parties differ. Defendant contends that three provisions of the trust indenture are controlling. They are as follows:

"Article I, Section 1 (t).

"Provided that no bond, debenture, note or other obligation shall for any purpose of this Indenture be deemed to be part of Funded Indebtedness if moneys sufficient to pay or discharge such obligation in full

(either on the date of maturity expressed therein or on such earlier date as such obligation may be duly called for redemption pursuant to the provisions of any trust instrument under which the same was issued) shall have been deposited with the proper depositary, or with the Trustee, in trust, for the payment thereof.

"Article I, Section 1 (pp) page 40.

"Bonds shall be deemed to be 'issued' hereunder when duly authenticated by the Trustee and delivered to or upon the order of the Company pursuant to any of the provisions of this Indenture. Unless otherwise connoted by the context, no Bond shall be considered to be 'outstanding' or 'unpaid' under this Indenture whenever cash sufficient for the payment or redemption thereof in full shall have been duly deposited with the Trustee for such purpose.

"Article XII, Section 108, page 175.

"If at any time after all the outstanding Bonds shall have been called for redemption, or after provision satisfactory to the Trustee for the due giving of notice of redemption thereof shall have been made, the Company shall deposit with the Trustee for the benefit of the holders of the Bonds and of the interest coupons appertaining thereto, an amount in cash sufficient to redeem all such outstanding Bonds upon the redemption date designated in the notice, and to pay all such sums due or to become due for interest thereon, together with all charges and expenses of the proceedings in relation thereto . . . then and in that case, all property, rights and interests thereby conveyed, assigned or pledged shall revert to the Company, and the entire estate, right, title and interest of the Trustee therein shall thereupon cease, determine and become void".

It is the Commonwealth's position that one provision of the trust indenture is controlling as follows:

"Article III, Section 20.

"Notice of redemption having [been] duly given as provided in Section 16 or Section 19 hereof, according as redemption is to be made at the option of the Company or through the operation of the Sinking Fund, and an amount in cash sufficient to redeem the Bonds designated in the said notice having been deposited with the Trustee for that purpose at least two days before the redemption date designated in such notice, the Bonds so designated for redemption shall, on the designated date, become due and payable at the redemption price thereof herein provided for, anything herein or in the Bonds contained to the contrary notwithstanding; . . . After the date so designated for redemption; provided that cash sufficient to redeem all the Bonds designated for redemption on such date shall have been deposited with the Trustee for that purpose as hereinbefore provided, the Bonds so designated for redemption shall no longer be deemed to be issued or outstanding hereunder and shall cease to bear further interest or to be entitled to any of the benefits of this Indenture, or any other rights, except with respect to their pro rata shares in the funds deposited for their redemption; but all interest coupons pertaining to any such Bonds, which shall have matured prior to the redemption date, shall continue to be payable to the respective holders thereof, but without interest thereon".

Our conclusion after careful study of the trust instrument is adverse to defendant's contention and in favor of the Commonwealth. Two reasons support our view. In the first place the portions of the trust instrument upon which defendant relies do not support its views. In quoting in its brief from Section 1 (t), page 34, defendant omitted the significant language, "either on the date of maturity expressed therein or *on such earlier date as such obligation may be duly called for redemption* pursuant to the provisions of any trust instrument under which the same was issued". (Italics

supplied.) Yet this is the very heart of the matter, where defendant provides how and when its bonds shall cease to be "funded indebtedness". The meaning is clear. As of the date when the bonds are called for redemption, provided money for their payment has been deposited with the trustee, they cease to be "funded indebtedness".

Nor does section 1 (*pp*) page 40 help defendant. True, cash for payment of the bonds was deposited with the trustee and the section says bonds are not outstanding when this is true; but the section continues provided "notice of redemption" has been given. This notice of redemption again calls into consideration section 1(*t*). It refers to the "earlier date" on which the bonds have been called for redemption.

The defeasance clause of section 108 also compels a conclusion adverse to defendant's claim. It provides that upon deposit by defendant of money to pay off the bonds which have been called, the powers of the trustee and the bondholders cease and the company gets back its property. But the section again is referable to the "redemption date designated in the notice".

Section 20, relied upon by the Commonwealth, is merely more specific, providing, as it does, that after the date fixed for redemption, with money on deposit for their payment, the bonds cease to be issued or outstanding. The section is drawn so as to apply either to a partial retirement of bonds by the sinking fund or to a total redemption and in view of the clear intent found to run through all the sections to fix the date fixed for redemptioin as the effective date, it is unneccessary to consider defendant's argument that section 20 applies only to partial redemption.

The second reason for our conclusion may be referred to briefly. As has been said, the corporate loans tax is a tax on the property of the bondholder. It is in effect a tax on money at interest. So long as the money

is bearing interest the tax is due; that is certainly a plausible conclusion. In the case at bar interest was paid up to July 29, 1935. But, argues defendant, after the money was actually deposited with the trustee for the specific purpose of paying the bonds, the property was no longer taxable under the corporate loans tax but became taxable under the personal property tax and thus assessable against the individual bondholders.

The best answer to this argument is found in the notice to bondholders quoted above. This notice not only fixes July 29, 1935, as the date on which defendant had elected to "redeem and pay off the bonds" but requires the bondholders to present their bonds for payment "on or after the said redemption date". Section 20 requires that the money for payment be deposited at least two days before the redemption date. Accordingly the bondholders, being under notice as to the two days' period and receiving directions to present their bonds only on or after the redemption date, were not bound to assume a prior date. They could not be held to return under the personal property tax what they did not know they had.

The gist of our conclusion on this point is that the intention of defendant, as reflected in the trust indenture, was to make the date fixed for redemption the date when the bonds ceased to be outstanding. Defendant cannot now escape this conclusion by trying to make the trustee agent only for the bondholders: Bell et al. v. Scranton Trust Co., 282 Pa. 562. Where this is true the casual redemption of even a large part of the bonds before the redemption date does not relieve the corporation of its duty to withhold from the interest paid to the bondholders and to pay to the Commonwealth the corporate loans tax up to the redemption date. This is particularly true where, as here, the evidence does not disclose whether defendant, in paying interest up to July 29, 1935, as it was bound to do,

deducted the tax in question. If it be argued that our conclusion requires defendant corporation to pay the corporate loans tax on both the old five percent issue and the new four percent issue, the answer is obvious. If interest was paid on both the tax should be paid on both.

One final principle remains. After actual payment to the bondholder certainly the indebtedness ceased to be a corporate loan regardless of the redemption date. It was then money in the hands of the citizen. In Commonwealth v. Lehigh Valley Railroad Company, 104 Pa. 89, 99, it was held that if the bondholder actually paid the tax himself the corporation was relieved from its obligation to pay, just as we hold here that as to bonds actually paid off defendant corporation should be allowed credit. Accordingly, we make the following

*Order*

And now to wit, February 28, 1949, it is hereby adjudged and decreed that judgment be entered in favor of the Commonwealth and against defendant in the amount of $24,803.25, representing tax of $23,904.97, interest of $821.08 and Attorney General's commission of $77.20 on the amount of tax in dispute; but, whereas defendant has paid into the Commonwealth the sum of $26,203.20, a credit shall be entered upon the records of the Department of Revenue to the account of defendant in the amount of $1,399.95 representing the overpayment, unless exceptions hereto be filed within the time limited by law.

OPINION SUR EXCEPTIONS

BRAHAM, P. J., fifty-third judicial district, specially presiding, January 18, 1950.—This case comes before the court en banc upon exceptions to the decree of the trial judge dismissing defendant's appeal from settlement of corporate loans tax for the year 1935. The point in issue was whether defendant was liable for

the tax on bonds in the amount of $4,354,000 from June 14, 1935, to July 29, 1935. The dispute arose when defendant, having arranged to refinance an old series with a new series, sold the new series to the underwriters on June 14, 1935, and on the same date paid to the trustees of the old issue an amount sufficient to pay off the old issue. However, notice to the holders of the old bonds fixed July 29, 1935, as the date when the bonds would be redeemed and advised them to get their money on or after that date.

The fundamental conclusion reached in the adjudication is that the terms of the trust instrument, considered as a whole, make it perfectly clear that the redemption date fixed by defendant company is the effective date. This conclusion flows inevitably from the language used. The mention of the date for redemption prior to maturity in section 1 $(t)$, page 40, the reference to notice of such redemption in section 1 $(pp)$, page 40, and the use of the language "the Company shall deposit with the trustee . . . cash sufficient to redeem all such outstanding bonds upon the redemption date designated in the notice" in section 108 all illustrate the point. Section 20, page 175, is conclusive. This section relates in terms to procedure under section 16, which covers redemption at the option of the company as well as to ordinary redemptions out of the sinking fund, covered by section 19. Section 20 provides that "after the date so designated for redemption . . . the bonds so designated for redemption shall no longer be deemed to be issued or outstanding".

Other than to point out once more the manner in which defendant's problem is answered by the trust instrument, it is unnecessary to belabor the question further. Defendant's contentions have been considered in the adjudication.

Entertaining these views, we make the following

*Order*

Now, January 18, 1950, defendant's exceptions are each severally overruled and refused and the decree entered February 16, 1949, is hereby entered as a final decree as follows: It is hereby adjudged and decreed that judgment be entered in favor of the Commonwealth and against defendant in the amount of $24,-803.25, representing tax of $23,904.97, interest of $821.08 and Attorney General's commission of $77.20 on the amount of tax in dispute; but, whereas defendant has paid into the Commonwealth the sum of $26,-203.20, a credit shall be entered upon the records of the Department of Revenue to the account of defendant in the amount of $1,399.95 representing the overpayment.

Now, January 18, 1950, an exception is sealed to the above order for defendant.