# Central Trust Company of Pittsburg *v.* Lappe, Appellant.

*Corporation—Promoter—Lease—Ratification.*

Where a promoter of a corporation takes a lease in his own name for the purposes of the proposed company, and the corporation after it is organized ratifies his act before any withdrawal or disavowal by him, the lease becomes the property of the corporation; and this is the case whether the ownership of the lease is advantageous or otherwise.

Argued Oct. 29, 1906. Appeal, No. 137, Oct. T., 1906, by defendant, from decree of C. P. No. 2, Allegheny Co., July Term, 1905, No. 353, on bill in equity in case of Central Trust Company of Pittsburg v. H. A. Lappe. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an account and an injunction.

SHAFER, J., filed the following opinion:

This bill is to declare the defendant a trustee for the plaintiff of a certain lease, to require its assignment to the plaintiff, and to enjoin its assignment to any other.

### FINDINGS OF FACT.

1. In January, 1903, the defendant, H. A. Lappe, with several others, was engaged in organizing a trust company which was afterwards chartered, and is the plaintiff in this case. He became one of the eight or nine incorporators when the charter was obtained, and was elected president immediately upon the organization.

2. While the subscriptions were being obtained, and the organization effected, the respondent, Lappe, and Mr. Munro, who is now president of the company, and who was with Lappe a promoter of the company, went to Meyer, the owner of the building, No. 2033 Penn avenue, for the purpose of obtaining a lease of the property, with a view of having it used as a place of business of the new company. The building was at that time occupied by a saloon keeper, whose lease expired on April 1. After several interviews with the owner a lease was made with the defendant, Lappe, for one year with the privilege of five more at the rent of $80.00 per month.

3. This lease was made on January 24, 1903, and the charter of the new company was granted on January 30, 1903. As the company desired to begin business at once, a temporary location was secured at 2000 Penn avenue. The company being advised by the architect who examined the premises at No. 2033 that it would cost $8,000 to make the necessary changes to fit the building for banking purposes, concluded that they would not locate the bank there.

4. On February 28, 1903, Lappe made a lease of the premises to E. J. Donnelly, who then occupied the premises, for the term of four months from April 1, and this was done to enable Donnelly to procure another license, and then have it transferred to another place, Donnelly having taken stock in the company and the parties concerned not wishing to antagonize him. On April 3, the board of directors, Lappe, the defendant, being in the chair, passed a resolution " That Mr.

Lappe be authorized to dispose of the Meyer lease on the best terms possible."

5. After the meeting of the directors had adjourned, there was talk among some of them, and it was suggested by one, Mr. Langfitt, that the company ought to be satisfied with getting $500 out of the lease, but this was not agreed to by the others ; this being in the presence of Lappe. Lappe and Munro then vice president, went together to see Mr. Donnelly, to endeavor to sell the lease to him and asked him for $3,500 for it, which he refused to give. On other dates thereafter, negotiations were had with Donnelly, and attempts made to sell him the lease or to relet to him the premises for a higher rent, but without result until April 17, 1903, when Mr. Lappe wrote out a paper which was offered in evidence which he procured Donnelly to sign. This paper reads as follows : " I hereby agree to lease premises known as 2033 Penn avenue from H. A. Lappe, Trustee, for a period of six years from April 1, 1903, for a monthly rent of $120 payable monthly in advance, and further agree to expend at least $700 for improvements, etc." This was signed by Donnelly in the bank, and witnessed by the treasurer of the company.

6. About this time, whether before or after it does not perhaps clearly appear, and is not very material, an attempt was made by Lappe to assign the Meyer lease to the company. For this purpose he caused the attorney for the company to draw up an assignment from himself to the company, accompanied by a consent to such assignment to be signed by the lessor ; this being necessary because the lease contained a covenant not to assign without such consent. This paper was attached to the lease and taken by Lappe to Meyer to procure his signature to the consent, and Meyer refused to sign it.

7. After April 17, Lappe endeavored to have Donnelly sign a lease to the trust company for $120 a month with certain conditions as to subletting, which Donnelly refused to sign, and some time, perhaps six weeks or two months after April 17, Lappe caused to be written on the paper of April 17, and signed by Donnelly, an acceptance of the above lease, or offer to lease, signing " H. A. Lappe, H. A. Lappe, Trustee," and notifying Donnelly of what he had done, and this was thereafter treated as a lease.

8. The rent was paid by Donnelly in cash over the counter of the bank to the treasurer, but Donnelly refused to take a receipt from the trust company, and insisted upon a receipt from Lappe. Lappe thereupon signed some receipts in blank, and left them with the treasurer, who used them in receipting for the rent, sometimes signing " per B, Treasurer," or making other differences, which fact, however, appears not to have been known to Lappe. The rent so received was not turned over to Lappe, but was kept with other funds of the bank, and the $80.00 monthly owing to Meyer was paid to him by the bank, and all this with the knowledge of Lappe, who was president of the bank at that time. This continued for about a year when Lappe ceased to be president, and he then made claim to be the owner of the lease in his own right, and collected the rent thereafter himself, and has received the rent from that time until the present, and is paying the rent to Meyer.

### CONCLUSIONS OF LAW.

1. Having found as a fact that the respondent was actively engaged with others in promoting the company, which was afterwards formed, and that for the purposes of the company to be formed he took the lease in question, it follows if the company, after it was formed, ratified his act, and especially before any withdrawal or disavowal by him, the lease thereupon so far as the company was concerned, became defendant's property, and for the lease as between Lappe and the company, the company became liable for the rent, and became in every sense the owner of the lease, whether that ownership was advantageous or otherwise.

2. We are of opinion that the resolution of April 3, 1903, made in the presence of Lappe, and upon which he himself immediately acted, amounted to such a ratification, especially when taken in connection with the subsequent conduct of the parties.

3. If this be correct, it follows that the respondent is a trustee of the lease for the company. It would appear from the testimony that Meyer, the lessor, knew that the lease was for the company to be formed. If so Meyer could not object to the transfer to the company, notwithstanding the clause in the

lease against assignment, but Meyer is not a party to this bill. As the respondent is receiving rent to a greater amount than he has paid out, he should account to the complainant for what he has received, less proper payments out of the same if any such have been made, and he should be also enjoined from transferring the lease to any other than the plaintiff, or from incumbering the same.

Let a decree be drawn that the respondent is trustee for the complainant of the lease from Thomas Meyer to H. A. Lappe, dated January 24, 1903, and of the lease of April 17, 1903, from H. A. Lappe, trustee to P. J. Donnelly, constituted by the offer and acceptance of that date, that he assign and transfer to the complainant the last mentioned lease; that he be enjoined from transferring either of the said leases to any other person, or from incumbering the same, and that he account with the complainant for the money received by him from P. J. Donnelly, less amounts paid out by him as rent on the Meyer lease, and that he pay the costs.

*Error assigned* was the decree of the court.

*John P. Hunter*, of *Schoyer & Hunter*, for appellant.

*Joseph A. Langfitt*, with him *H. W. McIntosh*, for appellee.

PER CURIAM, January 7, 1907 :
Decree affirmed on the findings of fact and conclusions of law by the court below.