Commonwealth ex rel. Baldrige *v.* Sun Oil
Co., Appellant.

100

Argued May 21, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ.

*R. E. Lamberton,* of *Lamberton & Moffett,* for appellant.—The decisions make it very clear that the tax on corporate loans is not a tax on the corporation, but is a tax on each individual resident holder of the bonds; the treasurer of the corporation is merely the agent of the Commonwealth for the collection of the tax, and it is only the failure of the treasurer to assess and deduct the tax that makes the corporation liable: Com. v. Canal Co., 123 Pa. 594; Com. v. Lehigh Valley R. R., 129 Pa. 429; Com. v. Lehigh Valley R. R., 186 Pa. 235; Com. v. Barrett Mfg. Co., 246 Pa. 301.

And where the duty of assessment and collection by the corporate treasurer cannot be required consistently with the federal Constitution, there is no liability on part of the corporation for the tax: Com. v. New York, L. E. & W. R. R., 129 Pa. 463.

The legislature of Pennsylvania has attempted to require a personal duty to be performed by the corporate treasurer. Can it make this requirement of a nonresident? Pennsylvania has no more authority to require a nonresident to perform a duty as its agent than it has to require him to pay a personal property tax: Cleveland, etc., R. R. v. Com., 15 Wall. 300.

*Philip S. Moyer,* Deputy Attorney General, with him *Thomas J. Baldrige,* Attorney General, for appellee.— The duty imposed by the act requiring the treasurer of private corporations to assess and collect the tax due the Commonwealth on loans held by individual residents of this State can be imposed on a nonresidential treasurer of a foreign corporation doing business in this State, where the corporation has its home office and the treasurer performs his official duties within this State, including everything which he individually does with reference to the payment of interest: Com. v. Welsbach Co., 16 Dauphin Co. R. 130.

OPINION BY MR. JUSTICE KEPHART, June 30, 1928:

The sole question in this appeal is whether the State may require the treasurer of a foreign corporation that does business here to assess and collect the four-mill loan tax on corporate loans held by residents. The tax is imposed under section 17 of the Act of June 17, 1913, P. L. 507, amended July 13, 1923, P. L. 1085. Section 1 provides for tax on loans by residents where the company does no business here. The court below held that it could.

The Sun Oil Company is a New Jersey corporation, and maintains an office in Camden. It is registered and does business in Pennsylvania, having its home or principal office in the City of Philadelphia, where it maintains its executive staff, keeps its general corporate books, files and records, and determines the general policy of company business. The president lives in Philadelphia and the treasurer, while a resident of New Jersey, has his office at Philadelphia, where he performs most all of his executive duties, receiving bills and drawing checks there; some part of the treasurer's time is employed in other states. The company has certain mortgage indebtedness, evidenced by bonds, and, in the payment of interest, this distinction may be mentioned: some of the interest is paid in New York from funds

drawn from New York depositories, part is paid in New York from funds drawn on Philadelphia depositories, and the remainder is paid in Philadelphia. But all of the interest payments are on checks originally drawn in Philadelphia. Funds are transferred to the proper banking institutions for the payment of this interest, and are kept on deposit with banking institutions in Philadelphia and New York. The company is registered to do business in twenty or more states in the Union. Interest is payable, some in Philadelphia and some in New York.

Section 4 of the Act of June 30, 1885, P. L. 193, makes it the duty of the treasurer of every corporation doing business in this Commonwealth to assess and collect the four-mill tax imposed on corporate loans, and deduct it from the interest paid to individual residents on bonds held by them. The tax is not on the corporation, but on resident owners of bonds. The treasurer is the agent of the State for the assessment and collection of the tax, and, if he fails, the corporation becomes liable: Com. v. Phila., etc., C. & I. Co., 137 Pa. 481; Com. v. Del. Div. Canal Co., 123 Pa. 594; Com. v. Lehigh Valley R. R. Co., 186 Pa. 235. It is only on the failure of the treasurer to assess and deduct the tax that the corporation is made liable. But when the duty of assessment and collection connot be required consistently with the Constitution of the United States, there is no liability on the corporation (Com. v. Barrett Mfg. Co., 246 Pa. 301) for the treasurer's failure to return it.

The Act of June 17, 1913, P. L. 507, left unchanged the collection of taxes as in section 4 of the Act of 1885, but the Act of July 15, 1919, P. L. 958, amended section 18 of the Act of 1913 by adding these words: "The provision of this section shall apply to all foreign corporations, duly registered and doing business in this State, without regard to whether the treasurers or other fiscal officers of such corporations whose duty it may be to pay the interest on obligations of the character aforesaid

may be residents or nonresidents of this Commonwealth."

It is urged that Pennsylvania cannot require this duty to be performed by the treasurer of this company, who is a nonresident. It must be admitted that, if appellant's contention is correct, all that foreign corporations need do to evade the duty is to keep part of its funds out of the State and have its treasurer claim residence in another state, eating a few meals and sleeping there occasionally. Appellant's chief reliance is placed on N. Y., L. E. & W. R. R. Co. v. Pa., 153 U. S. 628. There the railroad was a New York corporation, with its principal office in New York. Its treasurer was a resident of that state, and had his office there. Under legislative authority, it constructed several miles of track in Pennsylvania, paying $10,000 each year for the privilege. It issued bonds by the authority of the laws of New York, the interest being payable in New York or London. Many of these bonds were owned by individual residents of Pennsylvania. During the year 1888, the Commonwealth attempted to collect the four-mill tax on loans from the company on the authority of section 4 of the Act of 1885, no return having been made by the treasurer. The claim was sustained by this court, but, on appeal to the Supreme Court of the United States, this action was reversed. Mr. Justice HARLAN, who wrote the opinion for the court, stated the question to be whether Pennsylvania may impose on the railroad company the duty, when paying in the City of New York the interest due upon bonds held by residents of Pennsylvania, of deducting from the interest the amount of the tax assessed on money loaned, owned by residents of this State. The case was then turned on the proposition that the regulation was so unreasonable as to impair the obligation of the contract, existing under the Acts of 1841 and 1846, between the State and this company, by which authority was granted to this company to come in for the price named. Mr. Justice HARLAN says (p. 641),

"The fundamental propositions [as submitted by the State]......are that the......Company is a private corporation of another State; that it has no right to do business in Pennsylvania without the permission of that State, and......is, therefore, subject to such reasonable regulations as may be prescribed by Pennsylvania, whether these regulations relate to taxation or to the business or property of the company in that Commonwealth." He further says (pp. 643, 644) that "the argument on behalf of the State leads logically to the conclusion that notwithstanding the provisions of the Acts of 1841 and 1846......Pennsylvania could, in its discretion, change those terms and impose any others it deemed proper......[and] that such regulations,—being reasonable in their character,—should be deemed to have been within the contemplation of the parties when [the] Acts [of 1841 and 1846] were passed, and therefore not in violation of the agreement under which the company entered the State." The court sustained the soundness of the general proposition, but held that the 4th section of the act is not within the category of reasonable regulations, first, because it sought to compel a foreign corporation in the state of its creation to do an act for the benefit of Pennsylvania when it performed only a very small part of its business in that state; second, because the company had previously bound itself, before the Act of 1885 was passed, to pay interest coupons, and could not avoid their payment for any reason; third, the coupons were made payable to the bearer, and it was impossible for the company to ascertain who really owned them, or the bonds from which they were detached. This, states the learned Justice, is quite sufficient to show the unreasonable character of the regulations attempted to be applied to this company under the Act of 1885. The opinion further says (p. 646):
"The......company is not subject to regulations established by Pennsylvaia in respect to the mode in which it shall transact its business in the State of New York.

The money in the hands of the company in New York to be applied by it in the payment of interest, which by the terms of the contract is payable in New York and not elsewhere, is property beyond the jurisdiction of Pennsylvania, and Pennsylvania is without power to say how the corporation holding such money, in another state, shall apply it, and to inflict a penalty upon it for not applying it as directed by its statutes; especially may not Pennsylvania, directly or indirectly, interpose between the corporation and its creditors, and forbid it to perform its contract with creditors according to its terms and according to the law of the place of performance." This is correct, and may be said of any foreign corporation doing business in a state. It applies to the facts in that case, and is to be considered in connection with the substantive law there announced. It does not apply where a state has a grip on corporate activities, as illustrated by the facts in the instant case. It will be noted that the reason for the decision in the Erie Railroad Case was that the state's regulatory control was limited by its contract, made before the Act of 1885 was passed, and that the regulations prescribed by that act imposed duties that could not be reasonably performed.

Before a state may compel a corporation of another state to submit to its jurisdiction in any aspect, it must be within the state in some form. Registration, which is but a license to do business, is not alone sufficient to warrant the imposition of this duty on the treasurer of a foreign corporation, and the acts evidencing "doing business" within the state must be such as to bring the treasurer within the control of the state. The act is not an effort to force a foreign corporation doing little or no business here to do something in the state of its creation for the benefit of Pennsylvania, nor does it force the treasurer of such corporation, living outside the state where its principal business is transacted and its offices are located, to perform a similar duty. In this

state, the corporation owned property, did business and performed executive functions.

Much stress is laid on the fact that the treasurer of the corporation lives in New Jersey, and is, therefore, a nonresident. A man may have a number of residences. He may have private dwellings in more than one place, and his official residence in another. If he is a member of a corporation as an officer, as part of its official household, his official domicile is where he performs the duties of his office. As an executive officer of the corporation, it is his official capacity at which the Act of Assembly is directed, not his individual capacity. This official residence is customarily where the executive offices are located, and here Philadelphia, it is admitted, is the place. His official acts were all in the State of Pennsylvania. Residence for all purposes must not be confused with citizenship, nor limited to a man's home. But we do not understand that the constitutionality of the section in question depends solely on the question of residence. It may be a factor, and, with other facts, conclusive: N. Y., L. E. & W. R. R. Co. v. Pa., supra. The reasons pointed out in that case for holding the regulation unreasonable do not all exist in the present case. This contract of mortgage was not made prior to the taxing act in force. There are no restrictions such as a contract limiting the regulatory control of the state. Further, it is not impossible in this day to ascertain who bondholders are; every corporation must know its bondholders because of federal income tax laws. When the Sun Oil Company came into the state, it had full knowledge of this law. The mere fact that the treasurer happens to eat and sleep outside the state will not relieve it from answering for the neglect of its treasurer. The question, so far as we are concerned, is, Where does he carry on his official business?

The question is very similar to that in Travis v. Yale & Towne Mfg. Co., 252 U. S. 60, where a New York statute, imposing an income tax, was construed. While the

validity of the income tax was one of the points at issue, there was another which intimately concerns the present case. Section 2 of the act required every company to withhold a certain per cent of all salaries in excess of $1,000, and the nonresident company was required to pay the tax to the controller. A Connecticut corporation was doing business in New York; it had employees who were residents of Connecticut and New Jersey, and were occupied in whole or in part in complainant's business in New York. Most of these persons were engaged under terms calling for stipulated salaries for a specific period. The company, contending that the controller of New York threatened to enforce the penalty of the statute against the complainant, the Connecticut concern, if it failed to deduct and withhold this 2% from the employee's wages residing in Connecticut or New Jersey, brought suit to enjoin the official; the act was upheld, and on appeal to the Supreme Court of the United States, N. Y., L. E. & W. R. R. Co. v. Pa., supra, was relied on. The court said, p. 77, "In the case at bar complainant, although it is a Connecticut corporation and has its principal place of business in that state, is exercising the privilege of carrying on business in the State of New York without any contract limiting the state's power of regulation. The taxes required to be withheld are payable with respect to that portion only of the salaries of its employees which is earned within the State of New York. It might pay such salaries, or this portion of them, at its place of business in New York; and the fact that it may be more convenient to pay them in Connecticut is not sufficient to deprive the State of New York of the right to impose such a regulation. It is true complainant asserts that the act impairs the obligation of contracts between it and its employees; but there is no averment that any such contract made before the passage of the act required the wages or salaries to be paid in the State of Connecticut, or contained

other provisions in anywise conflicting with the requirement of withholding."

Justice PITNEY, in that case, reviews N. Y., L. E. & W. R. R. Co. v. Pa., supra, holding that it was decided solely on the question of whether or not it was an unreasonable regulation, of such a grave character as to amount to an impairment of the obligation of the contract. The decision is conclusive of the constitutional question. There is no reaching out into New York or New Jersey, or anywhere else; it is simply a case where the State of Pennsylvania lays its hand on the officer of the company, whose official domicile is in this state, and requires him to do certain things.

Judgment affirmed.