## Commonwealth v. Andrews

*F. Gilman Spencer*, for Commonwealth.

*William R. Spofford* and *Robert S. Ingersoll*, Jr., for appellants.

SLOANE, J., September 19, 1941.—Andrews, appellant, a resident of Philadelphia, owns shares of the Salt Dome Oil Corporation, a Delaware corporation. The shares were assessed [1] by the Department of Revenue for personal property taxes: Personal Property Tax Act of May 18, 1937, P. L. 633, 72 PS §3244, et seq.

Andrews petitioned for reassessment; his petitions were dismissed; he appeals.

One of the several kinds of personal property subject to the tax is shares in a corporation formed in another State. Says the statute: "all shares . . . in any . . . corporation . . . created or formed under the laws . . . of any other state . . . , except shares of stock in any

---

[1] The assessments were for three consecutive years—1937, 1938, 1939. Our disposition is the same for all these years since the facts and question are the same.

". . . corporation . . . liable to a . . . franchise tax imposed by section twenty-one of the act, approved the first day of June, one thousand eight hundred eighty-nine (Pamphlet Laws, four hundred twenty), and its amendments and supplements, for State purposes under the laws of this Commonwealth; . . ."

It is this exception that brings about the issue here. Under that Act of June 1, 1889, P. L. 420, as amended, 72 PS §1901, the franchise tax applies to foreign corporations "doing business in and liable to taxation within this Commonwealth".[2]

That is the question: Is Salt Dome Oil Corporation doing business in and liable to taxation within Pennsylvania? That is the only problem certified by both sides. So that, simply, if the corporation does business here and is liable to taxation, we sustain the appeal. Otherwise we dismiss it and affirm the assessment.

The Salt Dome Oil Corporation is registered in Pennsylvania. It has filed franchise tax reports, corporate net income tax reports, and corporate loans reports, and has paid the small taxes due thereon.

Andrews claims exemption under the "exception clause", saying that the corporation does business here and is liable to taxation here.

The Commonwealth wants us to hold that the corporation is not doing business in Pennsylvania but is merely carrying on activities related to the internal management of the corporation, that it is not liable to pay the franchise tax, that its payment without liability to pay does not relieve the appellant, and that therefore appellant is assessable and liable to pay the personal property tax on these shares.

The corporation was formed and exists to seek, to find, and to. sell oil. Of necessity its operations and mechanic and scientific exertions must be in oil terrain.

---

[2] The further phrase "or having capital or property employed or used in this Commonwealth" has no pertinence here, it is agreed.

An oil business must have its productive operations where oil is to be found. In the instance of this corporation, it is in the southwest of our country.

Philadelphia has been its administrative office since its registration in this Commonwealth in 1936. This office is rented from Yarnall & Company, a brokerage firm, Mr. Yarnall being a director of the corporation, and is separate from the offices of Yarnall & Company. The articles of office furniture therein are owned by the corporation and it uses its own stationery. The corporation is listed on the office directory of the building and on the wall as one enters the office. The corporation also has its own telephone and is separately listed in the telephone directory. The office is directed by Messrs. Yarnall and Holden, who are vice-presidents and directors of the corporation. When the teletype of Yarnall & Company is used for messages concerning the corporation, the latter pays the cost of such messages.

Most of the directors' meetings of the corporation are held in Philadelphia. Its stock is listed on the Philadelphia Stock Exchange and its transfer agent and registrar are located here. The corporation maintains two bank accounts in Philadelphia, one approximating $150,000 and the other between $60,000 and $70,000. Contracts entered into, with the exception of employment contracts, including contracts with other companies with which the corporation jointly exploits oil lands, are all approved in Philadelphia. Also, the loans necessary for the running of the business are approved in Philadelphia, though negotiated with financial institutions outside the State. The corporation also has an assistant secretary and treasurer in Philadelphia, and it pays the city's assessment on the wages of its employes. The correspondence relative to contracts and loans and related records is kept here. In short, the corporation has, because of the nature of its business, divided its management into two aspects—operating management and financial management. All actual oil

exploitation is done in the southwest. All financial direction and dictation of policy is accomplished in Philadelphia.

The circumstances that constitute doing business by a foreign corporation are circumstances that commend to common sense. Yet "doing business" is a confused concept. Circumstances are facts and, each case having its own, decisions must vary.

"It is evident . . . that the decision in each instance must depend upon the particular facts before the court": Von Baumbach v. Sargent Land Co., 242 U. S. 503, 516 (1917).

". . . the question, whether or not the company is doing business within the State is one of fact not necessarily depending solely on single acts, or on the effect of single acts, but on the effect of all the combined acts": Commonwealth v. Wilkes-Barre & Hazleton R. R. Co., 251 Pa. 6, 10 (1915).

Since each case has its own fact-premise, the concept is without edge or defined outline and has no precept. True, certain tests have been applied. But those tests are not comprehensive and serve to show the measure of activity in the particular case resulting in the conclusion "doing business". See Commonwealth v. Wilkes-Barre & Hazleton R. R. Co., supra, Mingus et al. v. Florence Mining & Milling Co., 302 Pa. 529, 533 (1931), and Hoffman Construction Co. v. Erwin, 331 Pa. 384 (1938). Isolated transactions are not the proper guide to the conclusion: Commonwealth v. Wilkes-Barre & Hazleton R. R. Co., supra; Stoner v. Phillipi, 41 Pa. Superior Ct. 118 (1909).

Confusion is also due to the variety of purposes for which the phrase is used, and the consequent variety of interpretations which logically follow therefrom. " 'Doing business' for purposes of taxation; doing it within a statute requring licenses; and doing enough business to justify the service of process are quite different things": Fletcher, Cyclopedia of the Law of

Private Corporations (Perm. Ed.), vol. 18, §§8712, 8804; and see authorities there cited. See also, Stradley & Krekstein, Corporate Taxation and Procedure in Pennsylvania (1940), vol. 1, §161. These distinctions must have been in the legislature's mind ("doing business in and liable to taxation") and have been recognized and alluded to by the Supreme Court of Pennsylvania. Where the question before the court was whether or not a foreign corporation was doing business within the State so as to be subject to service of process, our Supreme Court said:

"Decisions relating to taxing, licensing or to state laws that impede the free flow of interstate commerce do not control the question of service of process. . . . The degree of business activity must be greater in taxing and other situations: 25 Columbia Law Review 1018": Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, 245 (1927). See also Callery's Appeal, 272 Pa. 255, 267, 268 (1922).

Nor is our Commonwealth alone in its determination that the phrase shall be interpreted differently, depending upon the issue before the court. Mr. Justice Cardozo, while on the New York Court of Appeals, emphasized the propriety of and necessity for such distinctions in the oft-cited cases of Tauza v. Susquehanna Coal Co., 220 N. Y. 259, 267, 268 (1917), and International Text Book Co. v. Tone, 220 N. Y. 313, 318 (1917):

"Business may be sufficient to subject the foreign corporation that does it to the service of process, and yet insufficient to require it to take out a license." See also Thurman v. The Chicago, Milwaukee & St. Paul Ry. Co., 254 Mass. 569, 573 (1926).

The law review article cited by Chief Justice Kephart in the Shambe case, supra, entitled "An Analysis of Doing Business", 25 Columbia Law Rev. 1018, presents a thorough and careful consideration of the concept, and the author aptly and easily summarizes

the judicial interpretation of the phrase as follows (p. 1045):

"The business which must be transacted by a foreign corporation to permit service of process must be such as to warrant the inference that the corporation is *present*. To subject such a corporation to taxation for doing business, the transactions must not only show that the corporation is present but also that it is *active*. In order that qualification be rendered necessary, the corporation must not only be present and active, but its activity must be *continuous*."

The element of "activity" in the definition of "doing business" for taxation purposes was stressed by the Supreme Court of the United States in Von Baumbach v. Sargent Land Co., supra, at page 516:

"The fair test to be derived from a consideration of all [the cases] is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

From the facts established in the testimony of this case, I conclude this corporation was "active" in Pennsylvania and hence was doing business within the meaning of our taxing statutes. It is engaged in the oil business, which by its very nature requires the establishment of its productive operations at the place where the oil abounds. The administrative or financial activities have been segregated from the productive, and have been centered in Philadelphia. The office which the corporation maintains here is engaged in "continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes." Here it is that the directors' meetings are held, all matters of policy determined. Through this office are routed, for

approval, financial transactions and important contracts concerning the development of the oil fields and the sale of their product. The depository of the corporation's funds, its stock transfer agent and registrar are all Philadelphia concerns. And here, too, are kept all contracts, correspondence, etc., pertaining to the financial end of the business. For similar holdings in our and other jurisdictions on analogous factual situations, see Commonwealth ex rel. Baldrige v. Sun Oil Co., 294 Pa. 99 (1928), Commonwealth v. Wilkes-Barre & Hazleton R. R. Co., supra, Mingus et al. v. Florence Mining & Milling Co., supra, People of N. Y. ex rel. v. Glynn, etc., 125 App. Div. 328 (N. Y. 1908), Cheney Bros. Co. et al. v. Commonwealth of Massachusetts, 246 U. S. 147, 155, 156 (1918), and Old Dominion Co. v. Commonwealth, 237 Mass. 269 (1921).

In the Sun Oil Company case, a New Jersey corporation with its general and executive office located in Philadelphia, where its general policies were determined, was held to be doing business in Pennsylvania so that its treasurer, a nonresident who performed executive duties in Pennsylvania, was required to assess and collect the four-mill tax on corporate loans imposed on Pennsylvania residents. Though this case is not controlling, it is significant in its emphasis on the performance of executive functions in Pennsylvania (see page 106). In the Sun Oil case, the activity in this State was greater; in the instant case the nature and magnitude of the corporation's business does not require a more extensive type of managerial set-up than that now utilized in Philadelphia.

In Commonwealth v. Wilkes-Barre & Hazleton R. R. Co., supra, the court stressed the importance of holding directors' meetings and maintaining bank accounts in this State in determining whether a foreign corporation was doing business in Pennsylvania. These factors exist in the instant case.

In Mingus et al. v. Florence Mining & Milling Co., supra, the issue was whether or not defendant was amenable to the service of process in Pennsylvania. There a Delaware corporation conducted mining operations in Utah, maintained a Philadelphia office, paid rent therefor, had its name on the office door, on the building directory, and in the local telephone directory, held stockholders' and directors' meetings in such office, had its secretary and treasurer reside in Philadelphia, kept all books and records in Philadelphia, deposited funds in Philadelphia banks, issued and transferred its stock here, arranged its general business policy here and operated its mine on orders issuing from directors' meetings held in Philadelphia. The court reached the following conclusion (p. 532):

"From the above, it is apparent that the general executive business of the defendant is carried on at its Philadelphia office and that the company is managed from there.

"Under the foregoing facts, we are unable to see how it can be correctly stated that defendant is not doing business in Philadelphia. They show that its real business headquarters are located there, that its executive direction comes from there and its financing is there carried on. Indeed it carries on some of the most important of its business there."

In rendering this decision, I am not without apprehension lest it be deemed inferential judicial recognition of a subterfuge to deprive the State of revenue justly due it. Our Supreme Court has also expressed concern, in taxation matters, over the fact that such use might be made of its determinations. See Callery's Appeal, 272 Pa. 255, 264, 265, concurring opinion, 272 (1922). In this very case, the corporation taxes are nominal; certainly the personal property taxes would be more. So that I repeat to make it clear-white, that though "All taxes have to be laid by general rules" (Mr. Justice Holmes, dissenting, in Louisville Gas

& Electric Co. v. Coleman, 277 U. S. 32, 42 (1927)), each case as to "doing business and liable to taxation" must be determined on its own facts, and each must be weighed to prevent any successful attempt at such subterfuge.

On the particular undisputed facts of this case, I am persuaded, in integrum, to the conclusion that this corporation from its incipience was a Philadelphia concern, that the financial aspect of its business is centered here, and that its affairs in Pennsylvania are sufficient in measure and activity to constitute "doing business" for the purposes of the franchise tax.

The appeals are sustained and the assessments are set aside.