**SHARON HERALD CO. v. GRANGER,**
Collector of Internal Revenue.

Civ. A. 6870.

United States District Court
W. D. Pennsylvania.

April 30, 1951.

Leo H. McKay, (of Brockway, McKay & Brockway, Sharon, Pa.), for plaintiff.

Maurice P. Wolk, Special Asst. to Atty. Gen., Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is a suit for the refund of $2,878.-27, plus accrued interest, paid as income and excess profits taxes for the fiscal years ended March 31, 1941, 1942 and 1943.

The assessment resulted from the disallowance by the Collector of Internal Revenue of the Pennsylvania Corporate Loans Tax paid by the taxpayer in the years 1941, 1942 and 1943 on bonds issued by the taxpayer.

The Corporate Loans Tax here involved was imposed by the Act of Assembly in Pennsylvania against the bond holders in the first instance, Act of June 22, 1935, P.L. 414, § 17, its supplements and amendments, 72 Purdon's Statutes Pa. § 3250–10.

In order that a clear picture will exist as to the factual and legal questions which exist, a detailed historical statement is required.

Prior to 1935 there were two daily newspapers published in the City of Sharon, one known as "The Sharon Herald Publishing Company" (Herald), and the other known as "The News Telegraph Company" (Telegraph). In 1935, Herald was owned by four stockholders. For twelve years McDowell, one of the stockholders, had been the president of that company. In 1935, Telegraph was owned by three stockholders. Lartz was the general manager of Telegraph, and had been with that company for approximately ten (10) years. Prior to that time he had been with Herald. It is thus apparent that Lartz, having had a connection with both newspapers, could easily visualize the advantage of there being a single newspaper, rather than two competing papers, in the City of Sharon and vicinity. Lartz obtained a power of attorney from his associates and McDowell obtained a power of attorney from his associates, authorizing these two men to work out a program for consolidating the two papers.

Some of the seven owners were getting along in years and desired financial security. Lartz and McDowell were now interested in possible future profits. Accordingly, the financial structure and its division among the seven owners was fixed as follows:

| Name | 7% Debenture Bonds | 7% Preferred Stock | Common Stock |
|---|---|---|---|
| Dickinson | $65,000.00 | 250 Shares | 150 Shares |
| Aiken | | 200 Shares | 450 Shares |
| Lartz | | | 700 Shares |
| Buchholz | 32,500.00 | 325 Shares | |
| Ramsey | 15,000.00 | 150 Shares | 350 Shares |
| Pharmer | 5,000.00 | 50 Shares | 100 Shares |
| McDowell | | | 750 Shares |
| Total Original Issue | $117,500.00 | 975 Shares | 2500 Shares |

The capitalization of both papers was represented by common stock only. Neither company had any bonded indebtedness, although there was a small mortgage on Telegraph which was paid shortly after the consolidation of the papers. After several months of negotiations between Lartz and McDowell, during which time each discussed the developments with their respective associates and obtained their suggestions, these two men eventually worked out a plan of consolidation of the two papers. It is to be noted that the younger men, Lartz and McDowell, did not take any debenture bonds or preferred stock, but took 1450 shares of the 2500 shares of common stock. They thereby acquired the control of the common stock and of the policies of the new company.

During the negotiations, prior to the incorporation of the new company, Dickinson, who was to hold the major share of the bonds, raised the question with Lartz as to who should pay the state tax on the bonds to be issued by the new company, and Lartz and McDowell agreed that this tax would be assumed by the corporation so that the bonds would be tax free in the hands of the holders.

At the final meeting of all the owners of the two companies, prior to the formal consolidation, the plan in its entirety, including the payment by the corporation of the state tax, was agreed to by all seven, without deduction from the interest due the bondholders. One reason for the agreement as to payment of the state tax by the corporation was to provide that the holders of the debenture bonds would receive the same seven percent net return as the holders of the seven percent preferred stock. There was no tax on dividends of a Pennsylvania corporation at that time. The same is true today.

298

The new Sharon Herald Company (Sharon) was incorporated May 13, 1935, upon the basis of the agreed financial structure.

When the new corporation came into existence, it adopted the agreement that the bonds were to be tax free in the hands of their holders by its corporate conduct in paying the state tax from the beginning without deducting that amount from the interest paid to the bondholders.

The obligation to pay this tax was not printed on the bonds nor did it appear on the minutes. The reason for this was that it was a small, closed corporation and the owners understood their arrangement with each other. Details were left to accountants and attorneys, and the incorporation of the understanding in the minutes or on the bonds themselves was probably not deemed necessary.

Between May 13, 1935 and March 29, 1937, it became apparent that seven percent bonds and seven percent preferred stock took too much out of the earnings of the company; and all of the holders of the seven percent debentures and the seven percent preferred stock exchanged their holdings for five percent debentures, thereby eliminating all of the preferred stock.

In 1943, the Collector of Internal Revenue, in making the regular audit of the corporation business, questioned the deduction for payment of the corporate loans tax and refused to allow it for that year. He also went back to the years 1942 and 1941, that being as far back as the federal law permitted the re-examination and restatement of tax to be made. (The deduction had not been questioned for the years 1936 to 1940, inclusive.)

Following this disallowance and as far as the Federal government was concerned, the matter seeming to hang on the fact that there was no written resolution by the company formally agreeing to pay the corporate loans tax or statement on the fact of the bond that it was tax free, a formal resolution was adopted by the Board of Directors of the company on November 15, 1943, and approved by the stockholders on November 27, 1943.

This resolution provided: It was strictly understood and agreed among the owners of Herald and Telegraph that the new company, Sharon, should pay any tax levied upon the holders of the debenture bonds, which tax had been paid by Sharon upon the outstanding 7% debenture bonds, and also upon the 5% debentures, the issue in their place; that the company would continue to pay any tax-federal, state or county-that might be levied against the holders of such debenture bonds, in order that the holder would receive the whole amount of 5%. This agreement and understanding among the seven persons who were the owners of the two papers was carried out by Herald, while the 7% debenture and 7% preferred stock were outstanding, and also since the redemption of said preferred stock and debentures, and the issuance in their place of the present 5% debenture bonds; that this assumption of the taxes was one of the reasons why the owners were willing to accept the lower rate of interest; that this obligation of the company has been recognized up to the present time by both the federal and state taxing authorities.

Following the adoption of this resolution, there was attached to each outstanding debenture a printed statement to the effect that the company would assume the corporate loans tax.

The deduction for this tax has been recognized by the Federal government since that time. The payment of this tax to the Commonwealth of Pennsylvania has been handled, since the adoption of the resolution, in exactly the same way that it was previously handled under the informal oral agreement.

### Question Presented.

In computing its income and excess profits taxes, is the taxpayer entitled to a deduction under the provisions of the Internal Revenue Code for state loan taxes which it paid on behalf of its bondholders?

In support of its claim to deduct the payments made to the Commonwealth of Pennsylvania, taxpayer points, not to one, but to three provisions of the Internal Revenue Code which it contends authorize

the deduction: Section 23(a)(1) relating to ordinary and necessary business expenses; Section 23(b) relating to interest payments; and Section 23(c) relating to payments of taxes.

Section 23, as amended by Section 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798, provides, as it applies to the instant case. "Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) *Expenses.*

"(1) *Trade or business expenses.*

"(A) *In general.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.

\* \* \* \* \* \*

"(b) Interest. All interest paid or accrued within the taxable year on indebtedness, * * *

"(c) Taxes generally. Taxes paid or accrued within the taxable year". 26 U.S. C.A. § 23.

■ It is axiomatic that the allowance of deductions from gross income does not turn upon equitable considerations, but depends upon legislative grace. Accordingly, an expenditure is deductible from gross income only where there is a clear statutory basis therefor. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

In order that the issues may be viewed in their proper perspective, I shall treat separately with each of the subsections of Section 23, which are involved here, but for convenience will take them up in a somewhat different order than they appear in the statute.

A. *Deductibility as taxes under Section 23(c).*

■ Section 23(c) of the Internal Revenue Code allows as a deduction from gross income "Taxes paid or accrued within the taxable year". The applicable Treasury Regulations [1] provide, and the decisions [2] uniformly hold that expenditures are deductible under Section 23(c) only by the person upon whom the liability for payment of taxes is imposed.

■ The law is settled that the Pennsylvania corporate loans tax is not imposed upon the corporate obligor, but is levied against the holder of the bond, the corporation being merely the collector of the tax on behalf of the state. Fidelity-Philadelphia Trust Co. Tax Case, 354 Pa. 355, 47 A.2d 267; Commonwealth ex rel. Baldrige v. Sun Oil Co., 294 Pa. 99, 143 A. 495, 60 A.L.R. 737. Therefore, in paying the corporate loans tax, the company is paying a tax imposed on another, and it may not deduct the payments as "taxes" under Section 23(c). Warner Co. v. Commissioner, 11 T.C. 419, affirmed per curiam, 3 Cir., 181 F.2d 599.

Taxpayer seeks to overcome this obvious difficulty by arguing "that while the tax was not imposed directly upon the plaintiff corporation in the first instance * * * the corporation became liable to the Commonwealth for the taxes, and the imposition thereof was shifted to the taxpayer, when its treasurer failed to assess the tax and deduct it from interest payments to bondholders."

This contention, however, overlooks the nature of the corporation's liability for failure to withhold the tax from interest payments made to bondholders. The decisions of the Pennsylvania courts consistently hold that in such event the corporation's obligation is in the nature of a penalty for non-feasance rather than an obligation to pay taxes. Commonwealth v. Lehigh Valley R. Co., 186 Pa. 235, 40 A. 491; Commonwealth v. Lehigh Valley R. Co., 129 Pa. 429, 18 A. 406, 410; Common-

---

1. Section 19.23(c)–1 of Treasury Regulations 103. (Appendix, Infra.)

2. Magruder v. Supplee, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555; Eastern Gas & Fuel Associates v. Commissioner, 1 Cir., 128 F.2d 369; Massey v. Lederer, D.C.E.D.Pa., 277 F. 123.

wealth v. Delaware Div. Canal Co., 123 Pa. 594, 16 A. 584, 2 L.R.A. 798.

I believe the tax is not in any sense or in any degree a tax on the corporation or its property, but on the individual citizen of the state who holds the bonds. The corporation is chargeable with it only as a collector, and by reason of default in the duty to collect.

. Whether the amount which the defaulting corporation must pay to the Commonwealth is a penalty in the strict sense of the word, or whether it be regarded simply as collection by the state of a debt due from one of its collecting agents, it is clear that the amount paid by the corporation does not represent taxes of the corporation. Accordingly, the company is not entitled to a deduction under Section 23(c).

B. *Deductibility as business expenses under Section 23(a).*

It is contended that if the payments are not deductible as taxes paid, they should be allowed as business deductions under Section 23(a). A similar contention was rejected in Warner Co. v. Commissioner, supra, where it was held that Pennsylvania loan taxes paid by a corporation on its bonds are not deductible under Section 23(a).

█ The fact that the corporation may have been required, either by terms of the statute or under the decisions of the state courts, to make the payments to the Commonwealth is not enough to establish them as deductions under Section 23(a). The payments must not only be obligatory, but they must also be such as are ordinarily incurred in carrying on the taxpayer's trade or business. Interstate Transit Lines v. Commissioner, supra; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; A. Giurlani & Bros. v. Commissioner, 9 Cir., 119 F.2d 852.

· █ Tested by those standards, it is clear that taxpayer's claim to deduct the expenditures under Section 23(a) must be denied since there was no showing that they were ordinary in character or that they were in any way related to taxpayer's business of publishing newspapers.

Had taxpayer mistakenly failed to deduct the state tax from interest paid to bondholders, and if it could be shown that such failure did not result from unreasonable lack of care, there might be some basis for permitting the payments to be deducted as ordinary and necessary business expenses. National Brass Works v. Commissioner, 9 Cir., 182 F.2d 526.

However, that is not our factual situation. Taxpayer's argument that the payments were not voluntary because the State could have enforced collection from the corporation glosses over the fact that in voluntarily subjecting itself to liability, the corporation in no way benefited anyone but the bondholders. In that posture, the deduction must fail since the expenditure was unnecessary and was wholly unrelated to the conduct of taxpayer's business.

C. *Deductibility as interest paid under Section 23(b).*

The question here arising presents a most interesting picture of the inequities which are inherent in the income tax law.

The Act provides that—

In computing net income there shall be allowed as deductions: "All interest paid or accrued within the taxable year on indebtedness". 26 U.S.C.A. § 23(b).

The regulations promulgated thereunder so far as material here provide: In the case * * * of corporate bonds * * * containing an appropriate tax-free covenant, the corporation paying for someone else, pursuant to its agreement, a State tax * * * may deduct such payment as interest paid on indebtedness. (Treasury Regulations 103, Section 19.143–1 and 111, Section 29.143–1)

Identical language first appeared in Article 761 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, and has been repeated without change in successive Regulations issued under subsequent Acts.

In maintaining that it should be permitted to take the disputed deductions, taxpayer concedes that the bonds which it issued did not contain a so-called tax-free

covenant, that is, a written tax-free covenant on the part of the corporation to bear the burden of any taxes to which the bondholders would be subject. It is also admitted that the corporation did not formally agree to pay the tax on its bonds until November 27, 1942, which was after the close of the tax period in suit. It is asserted, however, that during the course of the pre-incorporation negotiations in 1935, the stockholders of the two predecessor corporations had agreed that the new company would, when organized, assume and thereafter pay the state corporate loans tax on its bonds.

■ The doctrine of permitting close corporations to act informally is recognized as an exception to the general rule that directors must act as a board at duty convened meetings. The exception is founded upon principles of equitable estoppel and is limited to instances in which the custom or usage of the directors is to act separately or informally and not as a board. 2 Fletcher, Cyclopedia of Corporations (Permanent Ed.), pp. 176–177.

Ordinarily there would be such a resolution. In this corporation, two persons have always held the great majority of the common stock. They were, for all practical purposes, the corporation. They agreed with the other incorporators and bondholders—seven in all—that the corporation (i. e. they themselves) would pay the state tax on the corporation's bonds. Everyone connected with the corporation understood the agreement and carried it out from the inception of the corporation to the present time.

■ Closed or small corporations may act informally and proof of their actions need not be confined to the formal minutes of meetings but may be established by other means. Nevertheless it remains incumbent upon the person seeking to bind the corporation to show that there was an informal contract or agreement entered into and that the contract was thereafter submitted to the directors or stockholders and was either approved by them or was acquiesced in by them with full knowledge of the facts. Miller v. South Hills Lumber & Supply Co., 334 Pa. 293, 6 A.2d 92; Mickshaw v. Coca Cola Bottling Co., 166 Pa.Super. 148, 70 A.2d 467.

I believe the taxpayer orally obligated itself to pay the state taxes on the 1935 and 1937 bonds, and did, in fact, pay the tax for a number of years, and that the existence of such a corporate agreement has been established.

■ Where parties have placed certain interpretations on agreements the courts will interpret the agreement in the same manner. Victory Investment Corp. v. Muskogee Electric Traction Co., 10 Cir., 150 F.2d 889, 161 A.L.R. 1436, certiorari denied 326 U.S. 774, 66 S.Ct. 232, 90 L.Ed. 467; McCormack v. Jermyn, 351 Pa. 161, 164, 40 A.2d 477.

■ The fact that this agreement was not formally adopted by the taxpayer would not make the agreement less binding on the corporation. A corporation may ratify and adopt a contract made by its promoters and thereby become liable thereon. Whitney v. Wyman, 101 U.S. 392, 25 L.Ed. 1050; Central Trust Co. of Pittsburg v. Lappe, 216 Pa. 549, 65 A. 1111; Girard v. Case Bros. Cutlery Co., 225 Pa. 327, 74 A. 201.

Whether the problem is considered as a written or an oral tax-free covenant, in each case the corporation has committed itself to pay the tax. In each the bondholder receives the same additional amount of interest on his bonds which would otherwise have been deducted from his interest payment. In each case the treasury of the corporation is reduced in identical amounts, and there is, in fact, the same reduction in the amount of net income for the taxable year.

The taxpayer argues that in fairness and in equity if the deduction should be allowed in one case, it should be allowed in the other.

The matter, therefore, becomes resolved into the question:—

Whether the obligation of the taxpayer to pay the state taxes upon its bonds must be

evidenced by a written covenant incorporated in the bonds or attached as a rider thereto, to be entitled to deduct the payments as additional interest under Section 23(b) and the Regulations promulgated under the Internal Revenue Code.

The Treasury Regulations recognize that under certain circumstances a corporation's agreement to pay taxes levied upon its bondholders is in effect an agreement to pay additional interest, and that accordingly the corporation may deduct such tax payments as "interest paid" under Section 23(b).

Whether the payments here in issue should be allowed as Section 23(b) deductions depends first on whether the Regulations are valid to the extent that they require the tax-free covenant to be in writing.

■ A regulation of the Treasury interpreting a provision of the revenue laws is deemed, upon subsequent re-enactment of the law in the same terms, to have received legislative approval and to have the force and effect of law. Commissioner of Internal Revenue v. Wheeler, 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166; Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536; Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52; Commissioner of Internal Revenue v. Pittsburgh & W. V. Ry. Co., 3 Cir., 172 F.2d 1010; Boehm v. Commissioner, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78.

The reasonableness of the Regulations is further demonstrated by the fact that the taxing statutes themselves some times differentiate between written and parol evidences of indebtedness. Flint Nortown Theatre Co. v. Commissioner, 4 T.C. 536; Ciro of Bond Street, Inc. v. Commissioner, 11 T.C. 188.

■ The Treasury Regulation cannot, of course, change the law but where two interpretations are possible, as here, the administrative view counts for something. Mearkle's Estate v. Commissioner, 3 Cir., 129 F.2d 386.

The reason necessitating a tax-free covenant in writing upon each bond arises from the possibility that such bonds may be scattered over a wide area and may be obtained by persons not a party to the agreement, which would create considerable inconvenience for taxing agencies to ascertain the actual deduction.

■ I believe the Regulations are valid, and that accordingly the taxpayer's right to deduct the state tax payments as "interest paid" must be denied since the bonds did not have written thereon, or attached thereto as a rider, the tax-free covenant as required by Section 19.143–1(b) of Treasury Regulations 103 and Section 29.-143–1(b) of Treasury Regulations 111.

In the Regulations and the administrative interpretations which have been made over a period of years, there has been no exception where due to the taxpayer's ignorance there has been a failure to comply with the provisions of law.

If I were permitted to interpret the Regulations differently, I would do so since in fairness and equity I believe the taxpayer should be entitled to the deductions. However, I must take the law as I find it, and no other result is possible. I cannot depart from well settled interpretation merely because it results in a disadvantage or inequity to a taxpayer.

This conclusion may appear harsh and unjust, but the remedying of harshness in the Internal Revenue Act is for Congress and not the courts. Boehm v. Commissioner, supra.

The United States Supreme Court has recently enunciated the doctrine of a rigid and literal application of the provisions of the Internal Revenue Code even though the equities may call for a construction of wider latitude. United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522.

### Conclusion.

The Commissioner of Internal Revenue properly disallowed the deduction. There has been no overpayment of taxes and the defendant is entitled to judgment.

## Findings of Fact.

1. The plaintiff is a corporation organized under the laws of Pennsylvania and at all times material has been engaged in the business of publishing a daily newspaper in the City of Sharon, Mercer County, Pennsylvania.

2. The defendant was at all times material the duly appointed and acting Collector of Internal Revenue for the Twenty-third District of Pennsylvania, with principal officers in the City of Pittsburgh.

3. The plaintiff corporation was incorporated May 13, 1935, by the consolidation of two predecessor corporations which had been engaged in the publication of daily newspapers in Sharon, Pennsylvania, the Sharon Herald Publishing Company and the News Telegraph Company.

4. Prior to the consolidation of the two predecessor corporations, all of the capital stock of the Sharon Herald Publishing Company was held by four individuals and all of the capital stock of the News Telegraph Company was held by three individuals.

5. Upon incorporation, the plaintiff issued $117,000 of 7% debenture bonds, 975 shares of 7% preferred stock having a par value of $100 a share, and 2,500 of no-par common stock. All of these were issued to and held by the seven former stockholders of the predecessor corporations.

6. No further changes in the capitalization of the company occurred until 1937 when the stockholders authorized the issuance of new 5% debenture bonds, to be exchanged, par for par, for the then outstanding 7% debentures and 7% preferred stock. New 5% bonds were thereupon issued in the amount of $215,000 to replace the old 7% bonds and preferred stock. Thereafter, plaintiff's capital structure consisted solely of 5% debenture bonds and no-par common stock.

7. Subsequent to the original issuance of the 5% debenture bonds in 1937, additional bonds were issued, both to the original holders and to outsiders. During the years ended March 31, 1941, 1942 and 1943, the total amounts of bonds outstanding were $284,100, $284,450 and $288,250, respectively.

8. Subsequent to 1937, some of the individuals to whom 5% bonds were originally issued died, and their bonds were distributed to their heirs or estates.

9. During the years ended March 31, 1941, 1942 and 1943, plaintiff's outstanding bonds were held by approximately 80 individuals.

10. The Pennsylvania Personal Property Tax Act, Act of June 22, 1935, P.L. 414, as amended, 72 P.S. § 3250–1 et seq. in force and effect during the years involved, provided in material part:

Sec. 17. All bonds issued * * * by any and every private corporation, incorporated * * * under the laws of their Commonwealth * * * are hereby made taxable for State purposes at the rate of eight mills on each dollar of nominal value * * *.

Sec. 18. It shall be the duty of the resident treasurer of each private corporation, incorporated by or under the laws of their Commonwealth * * * upon the payment of any interest upon any * * * bond * * * to residents of this Commonwealth * * * to assess the tax imposed by the seventeenth section of this act * * * [and] to deduct the tax upon the payment of any interest upon such indebtedness and return the same to the State Treasury. * * *.

11. During the taxable years herein the plaintiff paid the tax imposed on its resident bondholders by Section 17 of the Pennsylvania Personal Property Tax Act. The amounts so paid were from plaintiff's own funds and were not deducted from the interest payments made by plaintiff to its bondholders.

12. In its Federal income tax returns, plaintiff showed the amounts so paid as "State Corporate Loans Taxes" and claimed the payments as deductions from gross income.

13. On audit of plaintiff's tax returns for the fiscal years ended March 31, 1941, 1942 and 1943, the Commissioner of In-

ternal Revenue disallowed the said deductions, and as a result additional taxes were assessed against plaintiff and were thereafter paid as follows:

| Year ended | Kind of tax | Amount Principal | Interest | Date paid |
|---|---|---|---|---|
| 3/31/41 | Income | $ 285.69 | $ 56.04 | 10/5/44 |
|  | Excess Pr. | 623.43 | 122.29 | " |
| 3/31/42 | Income | 271.92 | 52.65 | " |
| 3/31/43 | Income | 11.03 | 2.11 | 9/26/46 |
|  | D.V.E.P. | 86.79 | 16.62 | " |
|  | Excess Pr. | 1,116.81 | 232.89 | 1/10/47 |

14. All of the foregoing payments were made to the defendant as Collector of Internal Revenue. In collecting said amounts the defendant acted under the direction of the Commissioner of Internal Revenue and upon probable cause.

15. Following payment of such additional taxes and interest, plaintiff timely filed claims for refund of the amounts so paid. The claims filed for the fiscal years ended March 31, 1941 and March 31, 1942, were formally disallowed by the Commissioner of Internal Revenue on January 7, 1947. At the time this action was filed, the Commissioner had not yet acted upon the refund claim for the year ended March 31, 1943.

16. Plaintiff's payments of the taxes imposed by Section 17 of the Pennsylvania Personal Property Tax Act were not ordinary or necessary business expenditures and neither contributed to nor benefited plaintiff's business of publishing newspapers.

17. Plaintiff's payments of the taxes imposed by Section 17 of the Pennsylvania Personal Property Tax Act were not "taxes paid" which were levied or assessed against the corporate tax payer.

18. The 5% debenture bonds issued by plaintiff did not contain a written tax-free covenant and plaintiff did not by formal resolution agree to pay the tax imposed upon its resident bondholders by Section 17 of the Pennsylvania Personal Property Tax Act.

19. The 5% debenture bonds issued by the plaintiff did contain an oral tax-free covenant to pay the tax imposed upon the resident bondholders by Section 17 of the Pennsylvania Personal Property Tax Act.

20. The plaintiff did make payment of said taxes each taxable year with the knowledge, consent and approval of the officers, directors and stockholders of the taxpayer corporation.

21. The resident treasurer of the plaintiff corporation did not at any time assess the state tax against the resident holders of either the seven percent or five percent debenture bonds, nor notify them that it had assessed and deducted the state tax on said bonds, nor did it at any time deduct the said amount of taxes from the interest due to the bondholders.

22. Beginning with the tax year ending March 31, 1936, until the present time, the plaintiff showed on its corporation federal income tax returns and excess profit tax returns the amount of taxes so paid as "state corporate loans taxes" in the schedule of taxes supporting the item of deductible taxes on each year's tax return.

23. The agents of the Bureau of Internal Revenue did not challenge the claimed deductions for the plaintiff's fiscal years ending March 31, 1936, 1937, 1938, 1939, or 1940. They did refuse to allow the said deductions for the years ending March 31, 1941, 1942, and 1943, respectively.

24. On November 27, 1943, a resolution was formally adopted by the stockholders of the plaintiff corporation and on November 15, 1943, by its board of directors, recognizing in a fomal manner the existence of the said agreement. This action was taken to meet the objection raised by the Internal Revenue Bureau.

25. Thereafter, for the same purpose, there was attached to the outstanding debenture bonds a rider stating that the state

tax on the bond was assumed by the plaintiff corporation and would be paid by it.

26. As a result of such disallowance, the plaintiff was required to pay, and did pay, to the defendant, the additional taxes involved in this proceeding.

### Conclusions of Law.

1. This action arises under the laws of the United States providing for internal revenue and this Court has jurisdiction of the subject matter and of the parties.

2. Section 17 of the Pennsylvania Personal Property Tax Act imposed a tax on plaintiff's resident bondholders and not on plaintiff.

3. Such liability as plaintiff may have itself incurred to the Commonwealth of Pennsylvania for failure to collect from bondholders and remit to the State Treasury the tax imposed by Section 17 of the Pennsylvania Personal Property Tax Act was not a liability for taxes.

4. The amounts paid by plaintiff to the Commonwealth of Pennsylvania were not ordinary and necessary business expenses paid or incurred in carrying on plaintiff's trade or business, and were not deductible from gross income under Section 23(a) of the Internal Revenue Code and the regulations promulgated thereunder.

5. The amounts paid by plaintiff to the Commonwealth of Pennsylvania were not "taxes paid" within the meaning of Section 23(c) of the Internal Revenue Code and were not deductible from gross income under Section 23(c) and the regulations promulgated thereunder.

6. Section 19.143-1 of Treasury Regulation 103 is a valid regulation and has the force and effect of law.

7. Section 29.143-1 of Treasury Regulation 111 is a valid regulation and has the force and effect of law.

8. The amounts paid by plaintiff to the Commonwealth of Pennsylvania were not "interest paid" within the meaning of Section 23(b) of the Internal Revenue Code and the regulations promulgated thereunder.

9. That as a result of the failure to comply with the regulations promulgated under Section 23(b) of the Internal Revenue Code, the plaintiff is not entitled to deduct said payments from gross income.

10. Plaintiff did not overpay its federal income, declared-value excess-profits, and excess profits taxes for the fiscal years ended March 31, 1941, March 31, 1942 and March 31, 1943.

11. The defendant is entitled to judgment and to his costs and disbursements herein.

An appropriate Order is entered.